FILED

Oliver Robert Hoyte

8509 N 46th Street

Tampa, Florida [33617]

2021 FEB 11 PM 2:37

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

2/11/2021

IN THE UNITED STATES FEDERAL DISTRICT

COURT FOR THE MIDDLE DISTRICT OF FLORIDA

Oliver Robert Hoyte  ]  Request for Jury Trial
   Plaintiff  ]  Reserve the Right To Amend
   Vs.  ]  Case # 8:21 cv 341-CEH-AEP
NATIONAL COMMUNITY CAPITAL  ]
FUND TAMPA#1, LLC  ]
Jason Michael Vanslette]
Marc Anthony Marra  ]
SERVIS ONE, INC. DBA  ]
BSI FINANCIAL SERVICES  ]
   Defendant's  ]

*Emergency Hearing Request*

## 5.5 MILLION DOLLAR CIVIL COMPLAINT FOR WRONGFUL FORECLOSURE

[ "Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

Plaintiff is before this court by special appearance, without waiving any rights, defenses, statutory or procedural processes to present his civil claim against the defendant's for wrongful foreclosure hereby complain and allege as following claims for relief under "Civil Rico" Federal Racketeering laws (Title 18 U.S.C. 1964) as the lender has established a "pattern of racketeering activity" by using the U.S. Mail more than twice to collect an unlawful debt and the defendants are in violation of Title 18 U.S.C. 1341, 1343, 1961 and 1962.

### Jurisdiction:

The Constitution and 28 U.S.C. § 1332 vest federal courts with jurisdiction to hear cases that "arise under" federal law. The Constitution vests federal courts with the authority to hear cases



"arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2. Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## FACTS OF THE DISPUTE:

a. The fact the defendant's filed wrongful foreclosure lawsuit in State court against the plaintiff will verify the defendant's contracted to provide a loan to the plaintiff, and the defendant's owed a legal duty to the plaintiff.

b. The defendant's duty was breached because they never provided a loan to the plaintiff.

c. The alleged loan was an exchange, of the plaintiff's signed promissory note for electronic credits from Federal Reserve.

d. Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. UCC §1-201(24), §3-104, §3-306, §3-105, UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511, UCC §§9-102(9), (11), (12)(B), (49), (64), 12 USC 1813(l)(1).

e. The defendant's accounting records will show the corporation has an offsetting liability to the homeowner pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR), and the alleged loan was always an asset to the defendant's.

f. These records include: a. FR 2046 balance sheet, b. 1099-OID report, c. S-3/A registration statement, d. 424-B5 prospectus and, e. RC-S & RC-B Call Schedules.

g. The corporation never registered the commercial instrument because they knew it was a financial asset to the debtor, and there was a breach.

h. The breach of contract has damaged the plaintiff in the following manner, and plaintiff is demanding compensatory damages to reimburse the plaintiff for costs associated with the injury. All of the monthly payments made on a fake loan plus interest for the number of year's payments were made, legal expenses. Plaintiff seeks $1,000,000.

i. Plaintiff also demand punitive damages as a remedy for the defendant's conduct that was intentional and excessively reckless. The wrongful foreclosure has cause negative affect on plaintiff's credit report.

j. The plaintiff also has other claims for relief because he will prove there was or a conspiracy to deprive him of property without the administration of justice, in violation of plaintiff's due process of law under Title 42 U.S.C. 1983 (Constitutional injury), 1985 (Conspiracy) and 1986 ("Knowledge" and "Neglect to Prevent" a U.S. Constitutional Wrong).

k. Under Title 18 U.S.C.A. 241 (Conspiracy), violators "shall be fined not more than $10,000 or imprisoned not more than ten (10) years or both." **The foreclosing party lacked standing to foreclose** because the alleged loan was created with the homeowner's signature on the promissory note the bank sold to the Federal Reserve for unlawful electronic credits.

l. **In this case there is no legal trustee because the promissory note and deed of trust was never registered into the trust, because it was bundled and sold during the securitizing process, and therefore uncollectable.**

m. Original Contract with the signatures of both the alleged borrower, and the lender have never been filed in court to verify there was a unilateral contract.

n. Without a certification of the accounting entries of the defendants cannot verify there was any debt.

o. It is well known in the legal community **a trust deed** is always used together with a **promissory note** that sets out the amount and terms of the alleged loan. Without an accounting of the terms, and the amount of the alleged loan filed on the court record, the State Court did not have jurisdiction to hear the case in State Court.

p. The deed of trust, and the promissory note must always be together, and without the note and the loan accounting entries, the attorney has failed to prove there was any debt, a second fatal flaw to the wrongful foreclosure.

Plaintiff's claims are brought forward Under Common Law:

**Elements For Common Law:**

1. Controversy (The listed defendants)

2. Specific Claim (wrongful foreclosure)

3. Specific Remedy Sought by Claimant ( 5.5 million dollars)

4. Claim Must be Sworn To (Affidavit of Verification attached), and I will verify in open court that all herein be true.

## I. PARTIES:

1.1 Oliver Robert Hoyte, is a resident of Hillsborough, Florida.

1.2 Servis One, Inc. dba BSI Financial Services does business in the state of Florida, and at relevant times serviced a loan acquired by SECRETARY HOUSING & URBAN DEVELOPMENT and United States Department of Housing and Urban Development. and allegedly ultimately by the NATIONAL COMMUNITY CAPITAL FUND TAMPA #1, LLC

1.3 Foreclosure Services is believed to be a law firm corporation operated from Florida and is in the business of conducting non-judicial foreclosures in Hillsborough County, Florida.

## II. FACTUAL ALLEGATIONS AND FIRST CLAIM: BREACH OF CONTRACT

2.1 On or about July 2008 the plaintiffs purchased a home and obtained a mortgage loan from the BANK OF AMERICA NA, in the approximate amount $140,000.

2.2 The plaintiff was never provided a loan, plaintiff's signed promissory note was the source of the electronic credits claimed to be a loan to plaintiff.

2.3 The alleged loan was created with plaintiff's signature because all commercial instruments such as promissory notes, credit agreements, bills of exchange and checks are defined as legal tender, or money, by the statutes such as 12 USC 1813(l)(1), UCC §1-201(24), §3-104, §8-102(9), §§9-102(9), (11), (12)(B), (49), (64).

2.4 **These statutes define a promissory note or security to be negotiable (sellable) because it is a financial asset. This is necessary because contracts requiring lawful money are illegal pursuant to Title 31 USC §5118(d) (2). All debts today are discharged by promises to pay in the future.**

2.5 Federal Reserve notes are registered securities and promises to pay in the future. They are secured by liens on promissory notes of collateral owned by real people.

2.6 The statutes do not provide the Federal Reserve Corporation a monopoly on promissory notes, as debt collectors insist.

2.7 Plaintiff's signature created the promissory note in dispute, and it was sold to the Federal Reserve in exchange for plaintiff's signed note.

2.8 Plaintiff's promissory note never became a registered security, and a financial asset that can be negotiated because for a commercial instruments to be legal tender, they must be secured by a maritime lien on a prepaid trust account recorded at the county and registered on a UCC1. It then becomes a registered security and a financial asset that can be negotiated.

2.9 The defendant's further complicated the fraudulent process by selling their payables to another entity to remove it from their balance sheet.

3.0 **This is called securitization or off-balance sheet financing.** No loan was provided to the plaintiff, and the defendant's failed to file evidence on the record to prove a contract existed.

3.1 The original contract and an accounting of the loan entries was never filed in the wrongful foreclosure case that was filed against plaintiff's property.

3.2 The Attorney who signed the "notice of default" document to execute the power of sale clause did not have standing, and therefore notice of default has a fatal flaw, and the foreclosure judgment must be vacated and this claim granted for the full amount demanded.

### III. SCHEME TO DEFRAUD:

3.1 The contract should be rescinded because the defendant did not provide full disclosure, the contract is extremely deceptive and unconscionable, In re Pearl Maxwell, 281 B.R. 101

3.2 The Truth in Lending Act, Regulation Z, 12 CFR §226.23, states that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures. The original debt was actually zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.

3.3 Promissory Notes and other commercial instruments are legal tender and financial assets to the originator and a liability to the lender. If a security interest in the note is perfected, by recording it on a lien as a registered security, the maker or originator becomes an entitlement holder in the asset. **But the defendant's do not understand that they have this liability because most people are unaware of it.**

a. UCC §1-201(24), §3-104, §3-306, §3-105,

b. UCC §§8-102 (7), (9), (15), (17), §8-501, §8-503, §8-511

c. UCC §§9-102(9), (11), (12)(B), (49), (64)

d. 12 USC 1813(l)(1)

3.4 The defendant's records will show the defendants have an offsetting liability to the plaintiff pursuant to FAS 95, GAAP and Thrift Finance Reports (TFR).

These records include:

a. FR 2046 balance sheet,

b. 1099-OID report,

c. S-3/A registration statement,

d. 424-B5 prospectus and

e. RC-S & RC-B Call Schedules

3.5 The defendant's never registered the plaintiff's signed promissory note (commercial instrument), because they know it is showing as a financial asset on their books.

3.6 The defendant's did not register the promissory note to establish a security interest in the financial asset to take the position of a secured creditor.

3.7 The promissory note is not listed on a maritime lien against the prepaid trust account and filed with the county recorder and put on a UCC1.

a. §8-102(13), §9-203; §9-505, §9-312

b. 46 USC §§31321, 31343, 46 CFR 67.250, §9-102(52), §9-317, §9-322

3.8 Plaintiff demanded the original foreclosure claim to be set off for recoupment, and to have the assets cancel out the liabilities according to:

a. FAS 140, §3-305, §3-601, §8-105, §9-404

3.9 It is a violation of both State and Federal law for a bank to sell an unregistered note that is a security that violation provides a right to rescission of the contract pursuant to Statutes.

## IV. DETRIMENTAL RELIANCE:

Detrimental reliance is a legal concept under the law of contracts. Ordinarily, a valid contract requires a proper exchange of consideration between the parties.

The plaintiff alleges facts establishing detrimental reliance:

4.1 The wrongful foreclosure case (that is the result of these claims) filed against the plaintiff in State Court will verify a. A promise was made between the parties. b. The plaintiff reliance on the promise was reasonable or foreseeable. c. There was actual and reasonable reliance on the promise. d. The reliance was detrimental. Injustice can only be prevented by enforcing the promise

4.2 The plaintiff signed a lien against his property in return for a loan and no loan was ever provided.

4.3 The plaintiff was tricked into repaying $150,000 when there was never any loan provided.

4.4 The unlawful lien against the plaintiff's property blocked him from selling the property and moving his family into a nicer home.

4.5 The payments made to the defendant's interfered with the Plaintiff opening his new business, providing for his children's education because of the payments made to the defendants for the fake loan.

4.6 The payments to the defendant's for the fake loan caused the plaintiff to be short of money to pay bills on time which caused the plaintiff's credit score to drop, which blocked plaintiff from getting the best financing, jobs, and plaintiff has even blocked from qualifying for housing and credit cards.

## IV. THIRD CLAIM UNLAWFUL DECEPTION IN THE ORIGINAL FORECLOSURE CASE:

4.1 The promissory note used to gain the court's jurisdiction in the wrongful foreclosure is fraudulent, the document was used in court as a security when it was never registered.

4.2 The Original promissory note signed to lien the property was the real source of the alleged loan.

4.3 Fact is the money the bank is claiming was a loan was generated by the plaintiff's signature.

## V. FOURTH CLAIM RICO:

5.1 In a Debtor's RICO action against its creditor, alleging that the creditor had collected an unlawful debt, an interest rate (where all loan charges were added together) that exceeded, in the language of the RICO Statute, "twice the enforceable rate," the Court found no reason to impose a requirement that the Plaintiff show that the Defendant had been convicted of collecting an unlawful debt, running a "loan sharking" operation.

5.2 The debt included the fact that exaction of a usurious interest rate rendered the debt unlawful and that is all that is necessary to support the Civil RICO action. Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, cert. denied, 473 US 906 (1985).

5.3 The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of Racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires.

5.4 The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the Congressional purpose as broadly formulated in the statute. Sedima, SPRL v. Imrex Co., 473 US 479 (1985)

## VI. FIFTH CLAIM: WRONGFUL FORECLOSURE

6.1 As a proximate result of the negligent or reckless conduct of NATIONAL COMMUNITY CAPITAL FUND TAMPA#l, LLC and the attorneys Foreclosure Services the homeowners' credit has been impaired the homeowners face the eminent loss of their property despite the fact the bank never made them a loan.

6.2 The foreclosing party did not have standing to file foreclosure because they have not filed evidence on the court record to verify a loan was made and or what the amount and terms of the alleged loan stated.

a "Fatal Flaws" robbed the court of Jurisdiction and the wrongful foreclosure is unlawful. "Jurisdiction can be challenged at any time." and "Jurisdiction, once challenged, cannot be assumed and must be decided." Basso v. Utah Power & Light Co., 495 F 2d 906, 910.

6.3 The plaintiff is seeking damages for wrongful foreclosure, and he has shown that (1) there was an irregularity in the foreclosure sale and (2) the irregularity caused the plaintiff damages. See University Sav. Ass'n v. Springwoods.

6.4 In this case there is no legal trustee because the promissory note and deed of trust was never registered into the trust, because it was bundled and sold during the securitizing process.

6.5 Unless enjoined, the plaintiffs will suffer irreparable harm and will not have an adequate remedy at law.

6.6 As a proximate result of the negligent actions of both defendants, the plaintiffs have suffered consequential damage and will continue to suffer additional damage in an amount to be fully proved at the time of trial.

## VII. SIXTH CLAIM: SLANDER OF TITLE

7.1 The defendants have caused to be recorded various documents including a Notice of Trustee Sale which has impaired the plaintiff's title which constitutes slander of title and the plaintiff should be awarded resulting damages to be fully proved at the time of trial.

## VIII. SEVENTH CLAIM: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

8.1 The defendants have engaged in a pattern of unfair practices in violation of the Florida Revised Statutes CHAPTER 501 Consumer Protection Act, 501.201-501.213 et seq. entitling the plaintiff to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

### IX. EIGHT CLAIM: SLANDER OF CREDIT

9.1 The plaintiff allege that the actions and inactions of the defendants have impaired their credit causing them to lose the ability to have good credit entitling them to damages, including statutory punitive damages pursuant to state and federal law, all to be proved at the time of trial.

### X. NINTH CLAIM INFLICTION OF EMOTIONAL DISTRESS

10.1 The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress.

### XI. THE ALLEDGED LOAN:

11.1 The defendant(s) never made a loan to the Plaintiff.

11.2 Plaintiff., believing he was receiving a FHA loan he gave the Defendant(s) a check for $75,000 on July 15, 2008.

11.3 The exact monthly payments of the alleged mortgage loan varied according to property taxes and other fees paid but a typical monthly payment was $1,292 including reserves for the payment of taxes and insurance.

11.2 Beginning in July 2008 and continuing until December of 2012 the plaintiffs made timely payments to Bank of America, N.A. until such time as the loan was assigned to NATIONAL COMMUNITY CAPITAL FUND TAMPA #1, LLC  and, thereafter, payments were made or demanded by Round Point Mortgages Servies  and then  Servis One, Inc. dba BSI Financial Services.

11.3 In early 2020, Servis One, Inc. dba BSI Financial Services and National Community Capital Fund Tampa #1, LLC claimed the plaintiff was behind on payments and hired Foreclosure attorney to commence foreclosure.

11.4 Around early February 2020 through an investor plaintiff discovered he was being sued for foreclosure, he filed request for more time and then responded with an AFFIDAVIT OF TRUTH with the clerk challenging status, standing, and jurisdiction of the court with no response. Court proceed with proving status and jurisdiction.

11.4 There was a meeting schedule Wednesday, May 20, 2020 at 9:00 A.M attorney for the alleged lender Jason Michael Vanslette canceled the hearing of the filing of the AFFIDAVIT OF TRUTH.

The next communication form the defendent(s) or the court was a Notice of Trustee Sale scheduling a judicial foreclosure for November 30, 2020 was transmitted to the plaintiff.

11.5 National Community Capital Fund Tampa #1, LLC and/or the attorney operating the Foreclosure Services transmitted to various credit reporting agencies, including Equifax, false adverse information about the plaintiff, causing his credit to be impaired.

**Wherefore**, having set forth various causes of action against the defendants, the plaintiffs pray for the following relief:

1. That this Court VOID the foreclosure sale held on Novembers 30, 2020, based on the attorney's fraudulent misconduct mentioned in the claim.

2. That the actions of defendants be determined to be unfair and deceptive business practices in violation of Federal Laws, and Federal Security statutes;

3. To be awarded compensatory and punitive damages provided for in the amount of 5.5 million dollars including costs and legal expenses;

4. That the Plaintiff be awarded consequential damages to be fully proved at the time of trial;

5. That the Plaintiff be awarded fees and costs pursuant to the written loan agreements which bind the defendants; and

6. That the Court grant any other relief that may be just or equitable.

_____ 2/11/2021

Oliver Robert Hoyte

Without Prejudice UCC 1-308

## CERTIFICATE OF SERVICE

I hereby certify that on the ___11___ th day of ___Feb___, 2/11/2021, the foregoing document was filed in Court, and a copy was mailed out to Plaintiff's attorney on record.

_____ 2/11/2021

Oliver Robert Hoyte

Without Prejudice UCC 1-308

Mailed to the following:

Bureau of Consumer protection
Federal Trade Commission
600 Pennsylvania Ave., NW. Washington

COMMUNITY LOAN FUND OF NEW JERSEY, INC (Agent)

NATIONAL COMMUNITY CAPITAL FUND TAMPA#1, LLC

1201 HAYS STREET, TALLAHASSEE, FL 32301-2525

Jason Michael Vanslette
Kelley Kronenberg
10360 W State Road 84
Fort Lauderdale, FL 33324-4237
jvanslette@kelleykronenberg.com

Marc Anthony Marra
Kelley Kronenberg
10360 W State Road 84
Fort Lauderdale, FL 33324-4237

mmarra@kklaw.com

Mark R. Wolfe
401 N Jefferson St Ste 615A
Tampa, FL 32399-1050
\wolfemr@fljud13.org

Ralph Cranston Stoddard
757 Cruise View Dr
Tampa, FL 33602-5917
cysrcs@tampabay.rr.com

Servis One, Inc. dba BSI Financial Services
1425 Greenway Dr, Irving, TX 75038

### VERIFICATION:

I' Oliver Robert Hoyte declare under penalty of perjury in accordance with the Laws of the United States of America that the foregoing is true and correct and complete to the best of my knowledge and belief.

_____ on this _____ Day, of _____ 2/11/2021

   Oliver Robert Hoyte

Without Prejudice UCC 1-308

On this _____ day of _____, 2/11/2021 before me, the undersigned, a Notary Public in and for the State of Florida, personally appeared the above-signed, known to me to be the one whose name is signed on this instrument, and has acknowledged to me that he has Executed the same.

Signed:_____

Printed Name: Stacy C McKay

My Commission Expires: 04/24/2022

Date: 2/11/2021   Common Law Seal: _____

STACY C MCKAY
Notary Public - State of Florida
Commission # GG 210801
My Comm. Expires Apr 24, 2022
Bonded through National Notary Assn.